UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LINDA GARDNER, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | 04-5141 (NLH) |
| | : | |
| v. | : | |
| | : | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | : | **OPINION** |
| | : | |
| Defendant. | : | |

**APPEARANCES:**

Thomas J. Hagner, Esq.
Hagner & Zohlman LLC
Commerce Center
1820 Chapel Avenue West, Suite 160
Cherry Hill, NJ 08002
*Attorney for Plaintiff Linda Gardner*

Steven P. Del Mauro
McElroy Deutsch Mulvaney
 & Carpenter
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
*Attorney for Defendant Unum Life Insurance Company of America*

**HILLMAN, District Judge**

Before the Court is Linda Gardner's motion for reconsideration of this Court's Order granting defendant Unum Life Insurance Company's ("Unum") motion for summary judgment and denying plaintiff's motion for summary judgment. For the reasons expressed below, plaintiff's motion is denied.

   **A.   Standard for Motion for Reconsideration**

Motions for reconsideration are not expressly recognized in

the Federal Rules of Civil Procedure. <u>United States v. Compaction Sys. Corp.</u>, 88 F.Supp.2d 339, 345 (D.N.J. 1999). Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under Fed.R.Civ.P. 59(e), or as a motion for relief from judgment or order under Fed.R.Civ.P. 60(b) <u>Id.</u> In the District of New Jersey, Local Civil Rule 7.1(I) governs motions for reconsideration. <u>Bowers v. Nat'l. Collegiate Athletics Ass'n.</u>, 130 F.Supp.2d 610, 612 (D.N.J. 2001). Local Civil Rule 7.1(I) permits a party to seek reconsideration by the Court in matters "which [it] believes the Court has overlooked" when it ruled on the motion. L.Civ.R. 7.1(I); <u>see</u> <u>NL Industries, Inc. v. Commercial Union Insurance</u>, 935 F.Supp. 513, 515 (D.N.J. 1996). The standard for reargument is high and reconsideration is to be granted only sparingly. <u>See</u> <u>United States v. Jones</u>, 158 F.R.D. 309, 314 (D.N.J. 1994). The movant has the burden of demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." <u>Max's Seafood Café v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999)(citing <u>N. River Ins. Co. v. CIGNA Reinsurance Co.</u>, 52 F.3d 1194, 1218 (3d Cir. 1995)). The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may

alter the disposition of the matter.  U.S. v. Compaction Sys. Corp., 88 F.Supp.2d 339, 345 (D.N.J. 1999); see also L.Civ.R. 7.1(I). "The word 'overlooked' is the operative term in the Rule."  Bowers v. Nat'l. Collegiate Athletics Ass'n., 130 F.Supp.2d 610, 612 (D.N.J. 2001)(citation omitted); see also Compaction Sys. Corp., 88 F.Supp.2d at 345.

Ordinarily, a motion for reconsideration may address only those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the decision at issue. See SPIRG v. Monsanto Co., 727 F.Supp. 876, 878 (D.N.J.), aff'd, 891 F.2d 283 (3d Cir. 1989).  Thus, reconsideration is not to be used as a means of expanding the record to include matters not originally before the court. Bowers, 130 F.Supp.2d at 613; Resorts Int'l. v. Greate Bay Hotel and Casino, Inc., 830 F.Supp. 826, 831 n. 3 (D.N.J. 1992) Egloff v. New Jersey Air National Guard, 684 F.Supp. 1275, 1279 (D.N.J. 1988).  Absent unusual circumstances, a court should reject new evidence which was not presented when the court made the contested decision.  See Resorts Int'l, 830 F.Supp. at 831 n. 3. A party seeking to introduce new evidence on reconsideration bears the burden of first demonstrating that evidence was unavailable or unknown at the time of the original hearing.  See Levinson v. Regal Ware, Inc., No. 89-1298, 1989 WL 205724, at *3 (D.N.J. Dec. 1, 1989).

Moreover, L.Civ.R. 7.1(I) does not allow parties to restate arguments which the court has already considered. See G-69 v. Degnan, 748 F.Supp. 274, 275 (D.N.J. 1990). Thus, a difference of opinion with the court's decision should be dealt with through the normal appellate process. Bowers, 130 F.Supp.2d at 612 (citations omitted); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F.Supp. 159, 162 (D.N.J. 1988); see also Chicosky v. Presbyterian Medical Ctr., 979 F.Supp. 316, 318 (D.N.J. 1997); NL Industries, Inc. v. Commercial Union Ins. Co., 935 F.Supp. 513, 516 (D.N.J. 1996) ("Reconsideration motions ... may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."). In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." Tishcio v. Bontex, Inc., 16 F.Supp.2d 511, 533 (D.N.J. 1998) (citation omitted).

**B. Gardner's Motion for Reconsideration**

Gardner's motion for reconsideration focuses on a March 2, 2004 letter by her treating physician, Dr. Friendenthal, in which he states that Gardner could perform sedentary activities for eight hours a day with certain qualifications. She reargues that Dr. Friedenthal only stated that she could work because one of Unum's agents, Dr. Gendron, provided him with incorrect information about her ability to work. Gardner argues that the

Court overlooked her June 20, 2004 letter in which she wrote to Unum stating that she went to see Dr. Friedenthal and he seemed very angry with her because Unum had given him false information and made her "sound like a liar." She further stated that she no longer could see Dr. Friendenthal and thought Unum should write to him to apologize for Dr. Gendron's misstatements. Gardner also argues that the Court made a determination as to Gardner's credibility.

    The Court did not overlook Gardner's June 20, 2004 letter. It was part of the record reviewed by the Court and also summarized in the arguments made by Gardner in her briefs. Therefore, the letter is not "new evidence that was not available" when the Court issued its order. See Max's Seafood, 176 F.3d at 677. Further, Gardner's argument that the Court should not have made a determination as to Gardner's credibility but should have denied both motions for summary judgment and held a plenary hearing does not apply the correct standard for review of denial of long-term disability benefits under ERISA. The Court did not make any determination as to Gardner's credibility, but rather, as stated in our Opinion, conducted a heightened arbitrary and capricious standard of review of the record consisting only of "... evidence that was before the administrator when he made the decision being reviewed." Gardner v. Unum Life Ins. Co. of America, No. 04-5141, 2006 WL 3676304,

at *6 (D.N.J. Dec. 8, 2006) (citing Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 388 (3d Cir. 2000); Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997)).  The Court concluded that it was not arbitrary and capricious of the administrator to deny Gardner benefits, even assuming that they considered her June 20, 2004 letter, because Dr. Friedenthal, who was her treating physician, examined Gardner on the very day that he wrote to Unum stating that she could work in a sedentary position for eight hours a day.

    Gardner also argues that the failure of Unum to respond to her June 20, 2004 letter telling Unum to contact Dr. Friedenthal violated ERISA regulation 29 C.F.R. § 2560.503-1(g)(1)(i) which requires that the notification of an adverse determination must include the specific reasons for the adverse determination. Gardner argues that Unum never informed her that it was not going to contact Dr. Friedenthal in light of her concerns, and never informed her that it did not believe her statements about the impairment of her relationship with Dr. Friendenthal.  She states that the Court erred by bolstering the administrator's reasoning and by basing its conclusions upon mental impressions including credibility determinations.

    In applying the heightened arbitrary and capricious standard of review, the Court did not make a credibility determination as to who was, or who was not, telling the truth to Dr. Friedenthal.

6

Rather, the decision was based on whether it was arbitrary and capricious for the administrator to deny benefits to Gardner after her treating physician wrote that she could work in a sedentary position even though Gardner disputed this conclusion and neither party clarified Dr. Friedenthal's statements.  We determined that under that standard of review, it was Gardner's burden to demonstrate how Unum's decision to deny her benefits was arbitrary and capricious, and concluded that Gardner had not met this burden.  Gardner, 2006 WL 3676304, at *7 (citing Pinto, 214 F.3d at 392).  Moreover, the arguments raised by Gardner are based on facts that were in the record and reviewed by the Court.  Thus, her argument is not "new evidence that was not available" when the Court issued its order.  See Max's Seafood, 176 F.3d at 677.

Gardner further argues that the misinformation supplied by Dr. Gendron was not known until after Gardner obtained counsel and had she obtained a report from Dr. Friendenthal after she obtained counsel, Unum would have afforded it little weight.  See Sell v. Unum Life Ins. Co. of America, No. 08-4851, 2002 WL 31630707, at *6 (E.D.Pa. Nov. 19, 2002)(finding that UNUM did not abuse its discretion when it failed to give controlling significance to doctor's letter written after plaintiff learned that her benefits were terminated and that was in direct contrast to his earlier opinion).

7

Regardless of what Gardner could have done, the record does not contain any additional reports from Dr. Friedenthal that were submitted to the plan administrator.  To rule on whether Unum should have considered additional evidence from Gardner if she had submitted it, the Court would have to issue an advisory opinion.  Advisory opinions are prohibited and, therefore, speculation as to what Unum may have done will not be considered by the Court.  See Wilmington Firefighters Local 1590, Intern. Ass'n of Firefighters v. City of Wilmington, Fire Dept., 824 F.2d 262, 266 (3rd Cir. 1987)(stating that opinion based on facts no longer operative would be an advisory opinion prohibited under Article III).

Finally, Gardner argues that the decision to deny her benefits was based on erroneous information, regardless of what party had the responsibility to correct Dr. Friendenthal's report, and reliance on clearly erroneous findings of fact represents abuse of discretion. See Bendixen v. Standard Ins. Co., 185 F.3d 939, 944 (9th Cir. 1999) (stating that "an administrator also abuses its discretion if it relies on clearly erroneous findings of fact in making benefit determinations.") (quoting Taft v. Equitable Life Assur. Soc'y, 9 F.3d 1469, 1473 (9th Cir. 1993)).[1]  In Bendixen, the Ninth Circuit found that

---

[1] The second case relied upon by Gardner in support of her argument that determinations based upon clearly erroneous findings is an abuse of discretion, Peterson v. Continential

even with contradictory evidence in the record, that the administrator did not abuse his discretion by concluding that the plaintiff was not disabled. Id. (quoting Taft again for the proposition that "[i]n the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion"). Here, even with evidence in the record that Gardner disagreed with Dr. Friedenthal's conclusion and felt that it was based upon false information provided by Unum, Dr. Friedenthal was her treating physician who physically examined her on several occasions, including the day that he wrote his March 2, 2004 letter. Thus, there was evidence in the record for Unum to base its denial on and its decision was not the result of "clearly erroneous findings of fact."

In addition, several months after her attorney filed a motion for reconsideration, Gardner without the assistance of counsel, filed a "pro se supplemental motion" attaching a letter dated March 18, 2005, presumably written by Dr. Friendenthal to

---

Casualty Co., 116 F.Supp.2d 532 (S.D.N.Y. 2000), was vacated in part and affirmed in part by Peterson v. Continental Cas. Co., 282 F.3d 112, 117 (2nd Cir. 2002), which stated that "[i]t is well established that federal courts have a narrow role in reviewing the discretionary acts of ERISA plan administrators" and that "... ERISA empowers federal courts to review the decisions of plan administrators, but provides no authority for a court to render a de novo determination of an employee's eligibility for benefits." (citing Pagan v. NYNEX Pension Plan, 52 F.3d 438, 443 (2d Cir.1995); Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995))(other citations omitted).

her attorney stating that Dr. Gendron gave him erroneous information concerning Gardner's ability to work.  In her "supplemental motion" Gardner argues that Unum's decision to deny her benefits was wrong and that she felt her attorney should have handled her case differently.

The letter written by Dr. Friedenthal to Gardner's attorney was not available to the administrator and not part of the record at the time that the decision was made to deny her benefits because it did not yet exist.  Although the Court has the power on a motion for reconsideration to correct a clear error of law or fact or to prevent manifest injustice, see Max's Seafood Café, 176 F.3d at 677, our role in this case was to review the denial of long-term disability benefits to determine if the administrator's decision was arbitrary and capricious under heightened review.  The Court does not engage in fact-finding or review the record de novo.  See Peterson, 282 F.3d at 117.  Accordingly, even if the substance of the letter was reformulated in admissible form, this court could not hear such evidence.[2]

---

[2] The letter is in the curious form of a letter to Gardner's counsel.  Even assuming that the contents are not privileged, there is no explanation as to why the substance of it - that Dr. Friedenthal felt misled - was not presented to the court in a proper form.  The answer may be the obvious one - counsel made a rational decision not to present it because the issue of Dr. Friedenthal's reliance on Dr. Gendron was already joined through other evidence at both the administrative and district court levels.  In that sense, the contents of the letter are not really new at all and therefore would not change the result here.

Further, Gardner's submission was well outside the deadline for filing a motion for reconsideration. See Local Rule 7.1(i). Thus, Gardner's "pro se supplemental submission" will not be considered by the Court. See Bowers, 130 F.Supp.2d at 613 (reconsideration is not to be used as a means of expanding the record to include matters not originally before the court).

Thus, Gardner has not shown that the Court should reconsider its Order affirming Unum's denial of long-term disability benefits and Gardner's motion for reconsideration is denied.[3] Also, since Gardner's motion for reconsideration is denied, and a notice of appeal has been filed, this Court no longer has jurisdiction to consider Gardner's counsel's motion to withdraw as attorney. Thus, the motion to withdraw is denied as moot.

An Order consistent with this Opinion will be entered by the Court.

                                    s/Noel L. Hillman
                                    NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

---

[3] The Court stated in its earlier Opinion that it was sympathetic to Gardner's condition, but that our task is not to decide de novo whether she should be granted benefits, or to weigh the evidence that was, or should have been, before the plan administrator. Our role is limited to a determination of whether the plan administrator's decision was arbitrary or capricious. Even applying a heightened review of that standard, there was evidence in the record upon which the administrator could base his decision and, therefore, the decision is affirmed. Also, under this standard, the Court cannot consider evidence, even assuming it is admissible, that was not before the administrator.